Next case is United States v. Lopez. May it please the court, my name is Jay Ofsiowich and I'm here on behalf of the defendant appellant Jose Juan Lopez. I came here this morning because the government chose to advocate for a sentence different from that than it agreed to when it entered into a plea agreement with Mr. Lopez. The issue before the court is whether the government's rights and reservations portion of the plea agreement permitted the government to change its position based upon Mr. Lopez's post-plea conduct. The section in the plea agreement at issue reads as follows. The government has reserved the right to modify its position with respect to any sentencing recommendation or sentencing factor under the guidelines including criminal history category in the event that subsequent to this agreement the government receives previously unknown information including conduct and statements of the defendant regarding the recommendation or factor. However, if we look carefully at this language, it does not permit the government to change its sentencing recommendation based on post-plea conduct. This language contains a limiting clause. I'm sorry, where does it say that the government can't change its recommendation based on post-plea conduct? With the limiting language of previously unknown information. If we look at this language, it limits the government to conduct. You're saying that's an inference to be drawn from the phrase previously unknown language. Correct, Your Honor. You're not saying there's anything in there that says the government can't change its recommendation based on subsequent conduct. It can change the recommendation only on conduct that was previously not known. So that's the language we need to look at. Previously pertains to information that occurred before the agreement was made. Unknown pertains to something that was not ascertained at the time. Information is knowledge of a particular event or situation. So if the government learns, for example, that before Mr. Lopez entered the plea, hypothetically if he committed another crime, that could cause them to change their recommendation. If all of a sudden there was an offense that he was convicted of that they didn't know and they miscalculated the criminal history guidelines, that would have permitted them to change their recommendation. However, conduct after he entered the plea that occurred does not give them that right. Why is that so? I mean, you could look at the phrase previously unknown information and you could also interpret it to mean that it applies to information that is new to the government when it is received. Well, previously though limits it to what occurred in the past. Now we know that the government had changed Previous modifies, it says previously unknown. It doesn't say previous events. It says previously unknown. Again, it's a limiting, again, Your Honor, respectfully, it's limiting to what occurred in the past. What that means is if the government knew something about, if the government knew something already at the time, it can't later change its mind and say, well, we didn't know this, but we're now deciding that we're going to ask for a heavier sentence based on something that we already knew about before, but at that time we agreed to these sentencing parameters. Well, I would agree with you on that, Your Honor, but it also is limiting to what has occurred in the past as opposed to what has occurred after the fact of when the plea agreement was entered into. You got subsequent to the phrase subsequent to this agreement, right? And that limits the government to relying on new information that was, that it got, that was received after the plea agreement was executed. We know that the, what we find here, Your Honor, is something interesting is that the government had changed their language in the plea agreements and this language, and actually they were using this language at the time this plea agreement was entered into and we don't know why they didn't use the new language, but there is a recognition by the government that this phrase was problematic and they had started using the phrase in there to include conduct and statements of the defendant subsequent to this agreement, to include post-plea conduct. So there's a recognition that there is problems with this language, that it is unclear, and we need to look at what is the understanding of the parties and... If you had said to the government, just for clarification, just to make sure that this agreement is as clear as it can be as to what it means, I'd like to add language to it that says when we say previously unknown information, information previously unknown to the government, we mean by that that the government may not change its recommendation because of crimes committed after this moment by my client, so that if my client then goes and commits murders and deals in drugs, the government can't change its recommendation. How much likelihood, this is mere clarification because you say that's already what it means, so all you're doing is adding clarification. How much likelihood do you think there is that the government would have said, yes, yes, that's exactly what we meant. Good thing we ask, we thank you for putting in this clarification. Given that we have very little say in what goes in the plea agreement as it is, it's unlikely that the government would give us anything on that. Generally we are handed the plea agreement and we're told this is it, take it or leave it, and if you don't take it, then we have to take our chances without a plea agreement. If I may sum up, Your Honor. You think there's a low likelihood and I agree with you. Given that the prosecutor did not follow the recommendations in the plea agreement and did not abide by law, we respectfully ask the court to vacate the judgment and remand for resentencing before a different judge. Thank you. Good morning, my name is Joel Violante. I represent the government of the United States, Western District of New York. The issue here before this court is whether or not the government violated or breached its plea agreement. And then whether or not the defendant's substantial rights were violated by any error made by the district court. In this case, the record's clear that the government did not violate or breach its plea agreement. Instead that it relied on section 19D in the plea agreement that specifically reserved its right to make recommendations to the court based upon subsequent information it receives after the plea. The government relied on this particular provision. It was brought before the district court at the time of sentencing and there was no objections with respect to it. The government was clear at sentencing what provision it was relying on and advocating for the enhancements that the court eventually applied. The enhancements that were for obstruction of justice and for denial of acceptance of responsibility. Both of those enhancements were applied based upon the defendant's post-plea conduct of being released after plea, being admonished by the court to abide by terms and conditions of his release, to not use any controlled substances. And we found out, or the court found out, that after a plea, the defendant decided to use controlled substances on at least three occasions. That he was instructed by probation to report to the office. And instead of reporting to the office, he cut off his ankle monitoring. And then he remained at large as a fugitive for over a month's time. Can you, I understand what happened in the case. And you, in your brief, you rely on Maldonado, which is summary order. Can you give us a more precise explanation as to what the word previously is modifying? Well, Judge, I think Judge LaValle touched upon it a little bit in his questioning. It's previously unknown information. It's hard to really detail in the language just in anticipating every type of conduct that could occur post-plea. I think it lets the parties know that if there's some information that occurs that they did not previously know about, then the government can, pursuant to the contract, this language, advocate or make reference to that information in however it decides to do at sentencing. This court, Judge, your reference . . . Is your answer to Judge Katzmann's question, it relates to the next word, previously unknown? Previously unknown, yes. Previously modifies unknown. Yes, but I think in reviewing that term, we also have to look to what says just prior to that subsequently. So you have to read it in that order. Subsequent to the taking of the plea, it becomes aware of previously unknown information. And which means, Judge, that how could you anticipate every action the defendant's going to partake after the sentencing? And it gives the government an opportunity to advocate its position at sentencing if it determines later on information that it did not previously know at the time of the plea. Because as indicated during counsel's argument previously, that it's essentially a contract. It's a negotiation between the parties. And if the government knew that the defendant was not going to accept responsibility ultimately as he did in this particular case, the government wouldn't agree in the plea agreement that acceptance of responsibility applies. If the government had known previously at the time of formulating this plea agreement that the defendant was going to obstruct justice in the manner which he did, the government would have advocated for that enhancement in the plea agreement previously, but it didn't know that information. In answer to your question, Maldonado, although it's a summary order, it arguably doesn't have precedential effect. The facts of that case were very similar in the very same language that's utilized in 19D, the plea agreement that the government relied on in this case was relied on in that particular case. And this court found that there's nothing ambiguous in the language regarding the language as it existed then, as it existed during Maldonado, and as it existed in the Lopez case. And this court found that the government did not breach its plea agreement. Your adversary makes note of some of the additional language in other agreements, including conduct and statements by the defendant subsequent to this agreement. Is this additional language consistent with the language in Lopez's plea agreement? And if so, why? Judge, I believe, as this court knows, the law's always evolving. And there's always many reasons why the government or defense requests certain things, why they modify the plea agreements. Look at the plea agreement that we have here, it's up to 15 pages, because it evolved into things that happened in other cases that weren't addressing the plea. Why that language was changed by the office, I don't have the answer at this point in time, what they felt. But I think what we have to do is just look at the contract that we're dealing with right here. And look at the terms and conditions of that contract and determine, based upon the plea agreement, which is our contract, employing the contractual principles, did the government violate its terms and conditions? And I think, I'm sorry. What's the answer to that question? The answer would be, Judge, that it doesn't make a bearing on our issue here. If anything, it may make it clearer. I have to, I think, concede that in reading the new language. But I don't think it does anything to make the language, in our case, ambiguous. So your position is then that if at the time of this plea negotiation, the defendant said, I want to make clear to you under this agreement that I am not going to stop taking cocaine. I'm an addict and I can't stop. You may want me to stop, but I'm going to continue. And then, entered the agreement, entered the plea. You would then be barred, because it wouldn't be previously unknown that he's going to continue using cocaine. You could not then advocate for a, you would be stuck with your bargain, because he did what you knew he was going to do, because he told you he was going to do it. Under those circumstances, Your Honor, I do agree with you. However, under those circumstances, I can't see agreeing to acceptance of responsibility under those same circumstances. So I think there would be a difference in the plea agreement we'd be looking at under those circumstances than as we are now. Because we didn't have the benefit of knowing that he was going to do this. Right. Right. I'm not suggesting though. Right. Right. And I think it goes to the very point of why we're here. It's also- I understand you to say that, did he raise the same argument in the district court? Judge, yes. Judge Saragusa, the district court actually brought it to everyone's attention. We have to look at the procedural history of here, of the application of the enhancements, first of all. Probation found the application for the enhancement of obstruction. They also found that based upon their defendant's conduct, there was not going to be acceptance of responsibility. Defense filed a statement with respect to sentencing factors that indicated they did not have objections to probation's finding. And then after that, the government filed their statement with respect to sentencing factors that advocated for the non-acceptance of responsibility and the obstruction. Judge Saragusa took it upon himself at sentencing to bring to the party's attention the fact that the government, you're making this argument to the court, it wasn't in a plea agreement, are you violating Lawlor? And they had a discussion on the record as to whether Lawlor was being violated, whether the government's breaching the terms and conditions of the plea agreement. Judge Saragusa inquired of the government what they're relying on and brought to everyone's attention this paragraph that we're facing now, 19D. Judge Saragusa went through it, read the statement, considered the statements by the government and the position it had taken. It made a finding on the record that he did not believe the government is violating Lawlor. Didn't believe that they were not violating the terms and conditions of the plea agreement. At that time, despite that finding, defense didn't object to that at all, nor did they say, hey, wait a minute. The government is violating that. I believe they are violating the terms and conditions of the plea agreement. I believe that this agreement's ambiguous and that this isn't the type of information 19D contemplating. I think that's very important for this court to consider, not only for the violation of the plea agreement, because at that time, the parties agreed that it applied. No one objected to it. And then what brings us to our next issue, if I may continue and finish, is whether or not there's substantial prejudice, whether substantial rights of the defendant were violated, because since there were no objections, this court has to review the case for plain error. And if we look at the case, we can't say that the defendant's substantial rights were violated. We can't say that there's anything that affected the integrity or fairness of the plea negotiating process, especially if everyone agreed to them, especially if there's no objection by defense. And we can't say that there was anything that affected the public reputation in the judicial process. One, because if we look at the record, Judge Saragusa even inquired the defendant essentially at A109 saying you understand, accept the responsibility. I have to deny that. The defendant himself said yes, I understand that. So there's nothing that anybody's going to look at and say that the government did something wrong and that the court did something wrong, that the defendant's rights were violated. In fact, the court could have sentenced the defendant to a little higher of 30 months, but he elected to give the defendant credit for some of his post-plea cooperation and sentenced him to 24 months. For those reasons, all those reasons, I respectfully request that the sentence not be disturbed. I'm sorry, you have covered this, but I'm not sure I understood you. You said that the judge raised the question of whether the government is entitled to change its recommendation based on post-plea agreement conduct. But did the defendant take the position before the district court? Did the defendant take the position it's taking here, that the plea agreement bound you not to change your recommendation with respect to subsequent conduct? None at all, Judge. It was all on Judge District Court that brought it to the attention of the court. I believe he even referenced . . . The defendant didn't argue it after the court had raised it? Nobody argued it. Even after that fact, there was no objection. Thank you. Thank you. I would like to just point out something with the government's timeline that they raised in regard to what's happened. As he's pointing out, that the PSR did come up with guideline calculations different from what was in the plea agreement. We should also be noted in before the PSR was prepared, the government had informed the probation office that it did not intend to abide by the plea agreement. And if you look at paragraph 37 of the PSR, it indicates that the government was going to change its position of sentencing. One of the things that we need to look at here is what the government should have done under Lawler. While the district court did raise the question of Lawler, following its questioning, the government said that yes, under Lawler, it believed that it could change its position, as opposed to remaining silent and just standing by the plea agreement. There are many things the government could have done here. What they've done throughout was to go against the plea agreement and advocate for a very different sentence. What they could have done and should have done here is have remained silent as to the sentencing recommendation that was set forth in the PSR. They would have been allowed to answer any questions that the court had regarding the offense, regarding any of the post-conviction conduct. Can I understand this? So the government said, appendix 94, we rely, as the court points out on paragraph 19D of the agreement, which authorizes the government to modify its position with respect to sentencing should new facts arise, which the government was not aware. In this case, facts arose, which it was not aware that they had happened. The defendant, after being released by the court to engage in proactive cooperation, had engaged in conduct which was not only criminal but violated your honor's expressed conditions requiring him not to use drugs to comply with directions of the officers and to comply with the directions of probation. So given that, Judge, we believe that we have satisfied our obligation under Lawler, notwithstanding that we are requesting your honor's sentencing to a higher sentencing guideline. The district court then agreed, saying, and I quote, the government is in compliance with Lawler for the reasons stated on the record. Mr. Lopez's counsel did not object to the finding, right? Or argue that the government's sentencing position was in breach of the plea agreement. Is that correct? That is correct, your honor. In fact, it raises some questions as to whether or not retained counsel was ineffective at that time by not objecting. We'd need to go into probably further hearings to deal with whether or not this was ineffective, whether or not there was actually a strategy that retained counsel was trying to go by. That maybe he was hoping by keeping his mouth shut on the Lawler issue, that he could then argue for a lower sentence based on the cooperation that Mr. Lopez did do. We don't know that, that would require probably a hearing on a 2255 petition. However, we can look at what happened on Lawler and even the court's interpretation of Lawler as to whether or not this was the correct decision for the government to change its position at sentencing. I mean, in terms of ineffective assistance of counsel, which you're saying is something that perhaps might be looked into. Is there any suggestion of ineffective assistance of counsel in your brief? I just note that it's a possible explanation. I'm not raising the claim because to fully deal with the whole ineffective assistance of counsel claim, we'd also have to look to see how retained counsel advised Mr. Lopez as to what was in the plea agreement. Did he fully go over everything, including paragraph 19D in the plea agreement? We know that the district court did not review that at the plea hearing. We know that at sentencing, it came up based on the district court doing it. The interesting thing is that when the district court started to question the assistant US attorney at sentencing, he actually wanted to go to the portions of the plea agreement allowing him to get out of a 5K motion as opposed to focusing on paragraph 19D. So he was a little confused as to which paragraph initially applied. The court then directed his attention to paragraph 19D. At this point, we don't, and in doing so, they didn't actually review the language on the record. They seem to be going off what their memory might be of paragraph 19D. So we don't know if they were in their own minds referring to the new language that's being used in the Western District of New York, or the language that was actually in this proceeding. So we're uncertain of that as well. So there's lots of questions here as to what the language means in this portion of the plea agreement. And if we go by ambiguities, and how do we interpret ambiguities, they're supposed to be resolved in the favor of the defendant. Given the fact that it's the government that has all the power in setting forth the terms of a plea agreement. Thank you. Thank you, your honor. The court will reserve decision.